UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN NOAH SHAPIRO, </br></br> PLAINTIFF, </br> vs. </br></br> DEPARTMENT OF JUSTICE, </br></br> DEFENDANT. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 16-0592 (JEB) </br> ) </br> ) </br> ) </br> ) </br> ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ryan Shapiro filed his Freedom of Information Act (FOIA) request with the Department of Justice's Office of the Solicitor General (OSG) to obtain: 1) the "change pages" of the United States Supreme Court, and 2) records related to the change pages, as well as changes to U.S. Supreme Court opinions. Subsequent to a search, Defendant produced one responsive document – an errata letter from OSG to the Supreme Court regarding an alleged error in the slip opinion in *Sabri v. United States*, 541 U.S. 600 (2004). Defendant now moves for summary judgment on the basis that 1) its search for responsive documents was reasonable; and 2) it produced the one responsive record to Plaintiff. Because the agency's search was not adequate, however, Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion for summary judgment should be granted.

**I.      STATEMENT OF FACTS**

Plaintiff submitted his June 6, 2014 FOIA request for records relating to U.S. Supreme Court "change pages" as well as other records related to changes between versions of Supreme Court opinions. The term 'change pages' "refer[s] to the marked up pages that result from editing and review within the Court following the initial opinion announcement (bench and slip opinions) and again after the publication of the preliminary print. They are literally the pages that the Court sends to the publisher of the *United States Reports* to indicate what changes to make for the 'final' and 'official' version." Richard J. Lazarus, *The (Non)Finality of Supreme Court Opinions*, 128 Harv. L. Rev. 540, 581 (2014).

Plaintiff sought these records after reading a May 24, 2014 New York Times front page article detailing the Supreme Court's quiet practice of revising its opinions after publication.[1] A Harvard Law Review article from 2014, written by former Assistant Solicitor General Richard J. Lazarus, also discusses the Court's practice of revising its opinions.[2] Both articles discuss the lack of transparency of the Court's practice. Given the importance of Supreme Court decisions, information on revisions to Court opinions is of great public interest.

Plaintiff requested two distinct classes of documents in his June 6, 2014 FOIA request: 1) *Case-related documents* referring to changes to individual Court opinions; and 2) *Policy-related documents* referring to procedures for requesting changes to Court opinions. On March 30, 2016, Plaintiff filed suit after receiving no response to his request. On May 30, 2016 – over two years after Plaintiff submitted his request -– Defendant conducted a search for responsive records. On June 27, 2014 Defendant responded to Plaintiff's FOIA request. In lieu of filing an answer to Plaintiff's complaint, Defendant filed its motion for summary judgment on July 6, 2016.

---

[1] Adam Liptak, Final Word on U.S. Law Isn't: Supreme Court Keeps Editing, N.Y. TIMES, May 25, 2014, at A1.
[2] Richard J. Lazarus, *The (Non)Finality of Supreme Court Opinions*, 128 Harv. L. Rev. 540 (2014).

Defendant searched for responsive documents using two distinct methods:

1) Defendant conducted an electronic query of its Automated Docket System (hereafter "ADS query"). OSG's ADS system is an "internal docketing system used to track case filings between the OSG and the Court" (Yancey Decl. ¶ 9); and

2) Defendant sent an email to certain OSG personnel requesting responsive records from those personnel (hereafter "email query"). Defendant sent its email query to "current OSG attorneys and asked whether anyone suggested/proposed a change to the Court." (Yancey Decl. ¶ 11.) The email query also asked whether the recipients "had any record consisting of, referring to, or relating to the 'change pages' of the Court; or changes between versions of Court opinions, or changes in published opinions, including errata." *Id.*

Defendant's search located one case-related responsive document through the email query. The email query located no policy-related documents. The ADS query returned neither case-related documents nor policy-related documents. (Yancey Decl. ¶ 11-13.) By letter dated June 27, 2016, OSG provided the one responsive document to Plaintiff. (Yancey Decl. ¶ 13.)

## II.     FOIA SUMMARY JUDGMENT STANDARD

When a plaintiff challenges the adequacy of a search for records, the defendant agency is entitled to summary judgment only if it establishes "beyond material doubt…that it conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A requester may then "produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment [for the agency] is not in order." *Founding*

3

*Church of Scientology v. National Security Agency*, 197 U.S. App. D.C. 305, 610 F.2d 824, 836 (D.C. Cir. 1979).

### III.   SUMMARY OF THE ARGUMENT

The ADS query, the email query, and affidavit are insufficient to entitle Defendant to summary judgment.  Instead, Plaintiff is entitled to summary judgment. Defendant's inadequacies fall into two categories:

#### a.  Defendant's ADS Query

1. Defendant did not disclose the search terms it used in its ADS query.
2. Defendant did not search other systems likely to locate responsive documents.
3. The ADS query could not have located any responsive *policy-related* documents.
4. The ADS query could not have located any responsive materials that were within OSG's control, but which were not physically present in the OSG office.

#### b.  Defendant's Email Query

1. Defendant provides insufficient detail about the method(s) used by recipients of the email query to search for case-related responsive documents.
2. The email query is an unreasonably narrow search method because it was sent only to current attorneys.
3. The email query could not have located responsive *policy-related* documents.

### IV.   ARGUMENT

#### a.  Defendant did not disclose the search terms it used in its ADS query.

Defendant's affidavit did not disclose the search terms employed in its ADS query.

The affidavit is therefore inadequate. The D.C. Circuit has stated that

> [a] reasonably detailed affidavit, *setting forth the search terms* and the type of search performed… is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

*Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (emphasis added). Here, Defendant is not entitled to summary judgment because its affidavit is insufficient.

### b. Defendant did not search other systems that are more likely to contain responsive documents.

The ADS query is inadequate because Defendant did not search any other record systems that may contain responsive documents.[3] In its affidavit, Defendant describes the ADS system as follows:

> The OSG Automated Docket System ("ADS") is an internal docketing system used to track case filings between OSG and the Court. The system contains information related to cases before the Court, appeal recommendations (adverse decisions), authorized petitions, and unnumbered matters (e.g., non-docketed matters). The OSG uses ADS to locate all case related documents/files physically located within the Office.

(Yancey Decl. ¶ 9.) The ADS system, therefore, is quite limited in two ways. Not only is it limited to case-related documents, but it only includes case-related documents currently physically located in the Defendant's office. Defendant does not mention or discuss any of its other record systems in its affidavit or explain why ADS is the only system likely to contain responsive records.

Defendant maintains at least two other record systems that are as likely to locate responsive documents: 1) Defendant's email system; and 2) Defendant's Case Tracking System ("CTS").

---

[3] Defendant's email query was not a search of Defendant's email system. Rather it was rather an electronic communication requesting responsive material from individuals in the OSG office. As explained, *infra*, the affidavit is inadequate with respect to this search because Defendant does not explain with any detail the methods used by those individuals to locate responsive documents, such as what keywords were used and what systems were searched.

5

Under D.C. Circuit case law, an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

A search of Defendant's email system is at least as likely to locate responsive documents as its ADS query. The ADS query is limited to *case-related* documents *physically present* in the office. ADS will not return the requested *policy-related* documents. Nonetheless, Defendant's affidavit states that it was searching for policy-related documents in ADS: "After conducting a search within ADS, there were no responsive records found with respect to Plaintiff's request. We found no policies or practices on the subject requested by Plaintiff, either instituted by OSG or the Court." (Yancey Decl. ¶ 10.) Defendant could not have reasonably expected to locate the requested policy-related documents within ADS.

Likewise, Defendant could not have reasonably expected ADS to locate the requested case-related documents. ADS will not locate any documents that are not physically present in the office. Documents that are not physically present would include records that only exist in electronic format, those that have been archived off site, or those that have been transferred out of OSG's office. Defendant's affidavit states that "[a]side from briefs filed with the Court and copies of Court opinions, OSG returns any files containing other material concerning the case to the Division…or government agency that has subject matter responsibility for the case." (Yancey Decl. ¶ 13.) Under this policy, the requested change pages and related records would constitute "other material concerning the case" that are within the control of OSG, but which have been physically transferred out of the office. Therefore, Defendant knew, or should have known, that responsive documents would be unlikely to be located using the ADS query.

    **i.**  **Defendant's email system**

6

A centralized search of Defendant's email system may have located responsive case-related documents. However, Defendant's affidavit does not discuss its email system or why it chose not to conduct a centralized search of email. As such, Defendant's affidavit is insufficient. The agency's email system is likely to contain relevant internal communications among various OSG personnel, such as attorneys and legal support staff, who may have a hand in preparing correspondence between OSG and the Court.  Such relevant email communications may also contain file attachments of draft official communications with the Court. Defendant's email system may also contain relevant communications between OSG and the DOJ Divisions or other government agencies having subject matter responsibility for each case.  Given the limitations of its ADS query, OSG's email system may be more likely to locate responsive material than ADS.

### ii.  Defendant's Case Tracking System

Defendant did not query its Case Tracking System (CTS). The data contained in CTS:

> "includes, but is not limited to: case name, division or agency assigned to the case, docket number, petition service date, court due date, lower court docket number, due dates for motions and correspondence received by the Solicitor General, orders issued by the Supreme Court, name, address and phone numbers of opposing and amici counsel, Deputy Solicitor General and attorney assigned to the case."

Major Information Systems, https://www.justice.gov/osg/osg-freedom-information-act-1.  It is reasonable to believe here that case information contained in CTS may include information related to changes in Court opinions, including official correspondence with the Court regarding such changes.  The records requested by Plaintiff may fall under the 'includes but is not limited to' material in the language cited above.  A search of Defendant's CTS system may have returned relevant documents. Unlike ADS, CTS is not limited to documents physically present in the office. Defendant's affidavit does not mention CTS or explain why a search of CTS would not have returned responsive records.

7

Defendant's affidavit is insufficient because Defendant failed to explain why it only searched ADS but not its email system or CTS for responsive documents.

### c. The ADS query could not have returned any responsive *policy-related* documents.

OSG uses the ADS system to locate *case-related* documents and files that are physically present in the OSG office. (Yancey Decl. ¶ 9). Thus the ADS query will not reveal any *policy-related* documents. Defendant was not reasonable in searching for policy-related documents in the ADS case tracking system. Defendant made no other effort to search for such policy-related documents requested by Plaintiff.[4] Therefore, the ADS query was not an adequate search method for policy documents in this case.

### d. The ADS query could not have located any policy-related responsive documents that were not *physically located* in the OSG office.

As argued above, ADS is a case tracking system and could not locate policy-related documents by its very nature. Additionally, ADS's limitation of documents physically located in the OSG office further unreasonably narrows the ADS query. Not only will ADS not locate policy documents, but it will not locate documents unless they are physically located in the office. This limitation excludes any documents that exist only in electronic format or those that have been archived off-site.

### e. Defendant's affidavit provides insufficient detail about the method(s) used in its email query.

Defendant provides insufficient detail about the method(s) used by each current OSG attorney pursuant to the email inquiry. As argued above in Section IV(a), the D.C. Circuit requires an agency to provide "[a] reasonably detailed affidavit, setting forth the search terms

---

[4] Defendant's email query to OSG personnel did not request any policy-related documents. See Yancey Decl. ¶ 11.

and the type of search performed…[.]." *Oglesby* at 68. Defendant did not supply sufficient detail regarding its email query. In its affidavit, Defendant describes the contents of the email it sent to the email recipients. The email is described as general in nature. See Yancey Decl. ¶ 11. It is impossible to know how the recipients conducted their inquiries. Neither Plaintiff nor the Court can discern whether the recipients searched their computer files, emails, archived emails, paper files, filing cabinets or other systems. If the attorneys conducted electronic searches of their computer files or emails, Defendant did not disclose what search terms were used. Without such detail about the email query, Defendant has not adequately described the search.

    **f. The email query is an unreasonably narrow search because it was sent only to current attorneys.**

Limiting the email recipients to current OSG attorneys is an unreasonably narrow search method for the following reasons: 1) Defendant failed to send the email query to support personnel, such as paralegals or legal assistants who may have knowledge of responsive records; and 2) Defendant failed to search the files of former OSG personnel. Searching the files of former OSG personnel is important here because the one responsive document produced in this case was a letter written under the then-current Solicitor General. This suggests that at least some such communications may be located by searching the records of former personnel.

Plaintiff knows of at least one letter to the Court written by a former Assistant Solicitor General requesting a change that was not located by Defendant.[5] In a footnote to his Harvard Law Review article on the subject, Former Assistant Solicitor General Richard J. Lazarus

---

[5] Plaintiff does not argue here that Defendant's search was inadequate because Defendant failed to locate the letter discussed in Mr. Lazarus's law review article. Rather, Plaintiff argues that a search of current AND former OSG personnel may have returned more responsive records. Defendant's affidavit did not address or explain its decision to search the files of current, but not former, OSG personnel.

9

discusses a letter that he himself wrote to the Court requesting change to an opinion. His footnote states:

> While serving as Assistant to the Solicitor General, I…authored the amicus brief on the merits filed, at the Court's invitation, on behalf of the United States and EPA. See Int'l Paper Co. v. Ouellette, 475 U.S. 1081, 1081 (1986)…[.] After EPA expressed concern about the substantive import of certain language in the Court's slip opinion, *I drafted a letter on behalf of the Solicitor General to the Court identifying the language of concern and recommending a modification that the Court ultimately adopted*. Because the records were, as required, left at the Department of Justice, I have no record of the letter drafted besides my own recollection.

Richard J. Lazarus, *The (Non)Finality of Supreme Court Opinions*, 128 Harv. L. Rev. 540, n. 352 (2014) (emphasis added).  This excerpt is attached as Exhibit 1.

In a very recent FIOA decision in U.S. District Court for the District of Columbia, this Court rejected DOJ's argument that conducting a search of 300 gigabytes' worth of former employees' email files was unduly burdensome.  In *Leopold v. National Security Agency*, Civil Action No. 1:14-cv-805 (July 11, 2016), Plaintiff sued the National Security Agency and the DOJ Office of Legal Counsel ("OLC") for FOIA records. One of the issues was OLC's refusal to search former attorneys' emails for responsive records. There, OLC's affidavit stated that keyword searches of the agency's email search would return so many false "hits" as to make evaluating the results unduly burdensome.  OLC had an eDiscovery tool called Clearwell that searches "the full text of emails and their attachments, including PDF files." (citation omitted). Here, Defendant's affidavit does not discuss its capability of searching the email files of former employees. Plaintiff does not know whether OSG, another DOJ component agency, also has access to Clearwell to conduct an email search of former employees.

      **g. The email query could not have located responsive *policy-related* documents.**

10

As described in Section III(a) above, it is clear from Defendant's affidavit that its email query did not include a request for policy-related documents. Paragraph 11 of the Yancey declaration demonstrates that the email query was not an adequate search for policy-related documents.

### V. CONCLUSION

For the foregoing reasons, Defendant's search methods and its affidavit are insufficient. Given the deficiencies in both the ADS query, the email query, and Defendant's affidavit, Defendant cannot demonstrate that it conducted an adequate search reasonably designed to locate responsive records. Summary judgment for Defendant should be denied and Plaintiff's cross-motion for summary judgment should be granted.

Dated: July 25, 2016                      Respectfully Submitted,

                                                             /s/ Joseph Creed Kelly
                                                         Joseph Creed Kelly [980286]
                                                         Law Office of Joseph Creed Kelly
                                                         1712 Eye Street NW
                                                         Suite 915
                                                         Washington, DC 20006
                                                         Ph/Fx: (202) 540-9021
                                                         jck@jcklegal.com

                                                         *Counsel for Plaintiff*