UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN NOAH SHAPIRO,

    Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 16-592 (JEB)

## MEMORANDUM OPINION

When it comes to the Supreme Court, Plaintiff Ryan Shapiro believes that Yogi Berra had it wrong. While the Yankees catcher opined, "It ain't over 'til it's over," Shapiro contends that for the Justices, it's not even over then. Relying on recent *New York Times* and Harvard Law Review articles, Plaintiff points out that the Court keeps revising its opinions even after publication. He therefore filed this Freedom of Information Act suit against the U.S. Department of Justice seeking records relating to such changes. The Office of the Solicitor General (OSG), the Department's representative at the Supreme Court, produced two responsive letters and now moves for summary judgment. Maintaining that OSG's search was deficient, Shapiro opposes and files his own Cross-Motion for Summary Judgment. The Court will grant each in part and deny each in part.

**I.**      **Background**

For those readers whose subscriptions to the Harvard Law Review may have lapsed, the Court reminds them that, a couple of years ago, Adam Liptak wrote a *New York Times* article discussing a study by Harvard Professor Richard Lazarus entitled "The (Non)Finality of Supreme Court Opinions," 128 Harv. L. Rev. 540 (2014), which described how the Supreme

1

Court continued to make corrections to its opinions months and years after their issuance. See Adam Liptak, Final Word on U.S. Law Isn't: Supreme Court Keeps Editing, N.Y. TIMES, May 25, 2014, at A1. Seizing on this news, Plaintiff Shapiro filed a FOIA request seeking records maintained at DOJ, particularly at OSG, related to both "change pages" and "changes between versions of Supreme Court opinions[] or changes to published supreme court [*sic*] opinions, including but not limited to erratum [*sic*]." ECF No. 10-2 (Declaration of Valerie Hall Yancey), Att. A (FOIA Request) at 1. The term "change pages" appears in the Lazarus article and "'refer[s] to the marked up pages that result from editing and review within the Court following the initial opinion announcement (bench and slip opinions) and again after the publication of the preliminary print. They are literally the pages that the Court sends to the publisher of the *United States Reports* to indicate what changes to make for the "final" and "official" version.'" Pl. MSJ/Opp. at 2 (quoting Lazarus article at 581).

Upon receipt of the request, OSG ran a number of queries through its Automated Docket System (ADS), which is "an internal docketing system used to track case filings between OSG and the Court. The system contains information related to cases before the Court, appeal recommendations (adverse decisions), authorized petitions, and unnumbered matters . . . ." Yancey Decl., ¶ 9. "ADS maintains tracking information on all such cases, regardless of whether the case documents/files are still physically located within the OSG office or have been transferred elsewhere and are no longer in OSG custody." ECF No. 18-1 (Supplemental Declaration of Valerie Hall Yancey), ¶ 8. The search located no responsive records. See Yancey Decl., ¶ 10. OSG also "electronically searched its 'OSG OFFICE POLICIES' folder on the OSG network shared drive . . . , which contains internal policy directives or guidelines." Yancey Supp. Decl., ¶ 5. This search, too, yielded no responsive materials. Id. Deputy Solicitor

General Edwin Kneedler thereafter sent an email to "current OSG attorneys and asked whether anyone suggested/proposed a change to the Court. The email also asked whether anyone had any record consisting of, referring to, or relating to the 'change pages' of the Court; or changes between versions of Court opinions, or changes in published opinions, including errata." Yancey Decl., ¶ 11.

One attorney responded that he had telephoned the Court with a suggested change, but had not sent a written request, and another attorney provided an "errata" letter in a particular case, a copy of which was produced to Plaintiff. Id., ¶ 12. In addition, after the date of its search, Deputy Solicitor General Michael Dreeben also sent a letter to the Supreme Court suggesting a minor revision to an opinion, and this letter was also produced. See Yancey Supp. Decl., ¶ 18. OSG also noted that, presumably at the conclusion of a case, it returns "files containing other material concerning the case to the Division of the Justice Department or government agency that has subject matter responsibility for the case." Yancey Decl., ¶ 13.

The parties have now cross-moved for summary judgment on the adequacy of OSG's search.

**II.   Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, the agency may obtain summary judgments on the basis of affidavits that are "relatively detailed and non-conclusory, and . . . submitted in good faith." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted; ellipses in original). Such "affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Id. (internal quotation marks and citation omitted).

**III.    Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C.

§ 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In the current Cross-Motions, there is but one question presented: Was OSG's search for responsive documents adequate? In providing an answer, the Court first considers the Defendant's explanation of the contours of its search. It next addresses Plaintiff's two principal objections.

### A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in

reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id.

To establish the sufficiency of its search here, Defendant submitted two declarations from Valerie Hall Yancey, who serves as both OSG's Executive Officer and its FOIA Officer. See Yancey Decl., ¶ 1. As set forth in more detail above, OSG conducted a search in its Automated Docket System (ADS) and its network shared drive, and it emailed all current attorneys seeking responsive materials. See Yancey Decl., ¶¶ 9-11; Yancey Supp. Decl., ¶ 5. The fact that only two such documents emerged does not alone cast doubt on the search's comprehensiveness. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (emphasis added; citation omitted). Yet OSG's failure to satisfy another FOIA requirement does. More specifically, at no point in her declarations does Yancey ever "aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "Where the government has not made such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of the search." Am. Immigration Council v. U.S. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 71 (D.D.C. 2014) (internal quotation marks and citation omitted). The Court thus cannot say that, on its face, OSG's search was adequate.

B.  Plaintiff's Objections

In challenging the adequacy of the search, Shapiro does not rely on the technical requirement set forth in Oglesby. He instead raises multiple specific objections in his initial

brief, only two of which he continues to argue in his Reply. Assuming for the time being that he is not pursuing the others, the Court will address only this pair of contentions.

Plaintiff first points out that Yancey did not initially disclose the search terms OSG employed in querying the ADS database. See Pl. Mot./Opp. at 4. While this is true, she has rectified that omission in her Supplemental Declaration, which lists the terms: "change page," "change opinion," "opinion letter," "amended letter," "amend opinion," and "amended opinion." Yancey Supp. Decl., ¶ 11. In his Reply, Plaintiff contends that "[i]t is . . . highly unlikely that those search terms would be fruitful," Reply at 2, because OSG concedes that "ADS does not contain the full body of the records indexed in that database[, meaning] that keyword search[es] of ADS would yield responsive records only if the relevant terms . . . appeared in the ADS data entry field identifying the letter that was recorded as sent on a particular date." Yancey Supp. Decl., ¶ 12.

Although Shapiro expresses his disdain for the search terms used, he never offers others that he prefers. In addition, Yancey explains that if OSG were to search the body, as opposed to the data-entry field, of all ADS documents, that would be highly impracticable: "There are over 100,000 records in ADS dating back to 1982, and OSG does not retain the case files pertaining to the cases to which the ADS system relates after OSG's involvement in the case ends." Id. The work would thus have to be done by hand in each of the agencies to which the records were returned. Plaintiff, moreover, has not even identified a single case by name or date that he wishes targeted. In these circumstances, the Court believes the ADS search adequate.

Shapiro's second objection is that OSG, in addition to asking current attorneys about records, "should have searched the electronic records of former OSG personnel." Reply at 3 (emphasis added). Citing the recent decision in Leopold v. National Security Agency, No. 14-

7

805, 2016 WL 3747526 (D.D.C. July 11, 2016), Plaintiff argues that Justice has the capability to use "Clearwell electronic discovery software" to search the electronic records of departed OSG attorneys. See Reply at 4. In Leopold, Judge Tanya Chutkan first concluded that the Office of Legal Counsel did not have to search the hard drives of former OLC attorneys for records regarding surveillance of judges. Id. at *5. She did, however, conclude that "Defendants have not established that searching the email files of departed OLC attorneys [via the Clearwell tool] would be unduly burdensome." Id.

OSG acknowledges the Leopold decision and concedes that "[a] search of the electronic records of all former OSG attorneys . . . could be accomplished by requesting the Justice Department's OCIO Office to conduct a search using the Clearwell electronic discovery software." Yancey Supp. Decl., ¶ 15. It nonetheless contends that FOIA "requires neither a 'perfect' search nor a search so exhaustive that it reaches every conceivable record." Def. Opp./Reply at 14 (citing cases). Since such a search would be unlikely to turn up responsive records, OSG believes that it should not be required. Id. Yet, it does not complain that such a search would be difficult to implement. In articulating the burden this would impose, OSG argues only that a comprehensive search using "broadly generic search terms" would likely generate an enormous cache of documents to sift through. Id. at 15. This may be true, but Plaintiff, unlike in his objections to the ADS search, sensibly offers more targeted terms that would appear to avoid this dilemma. See Reply at 4. The Court will adopt these and thus require OSG to search the emails of former attorneys using the terms "change pages," "change sheets," "amended opinion," and "revised opinion." If such terms still generate an unwieldy number of records, OSG may argue in a renewed motion for summary judgment that the burden of review outweighs the likelihood of recovering responsive documents.

In any event, the Court will require the parties to explain in a subsequent status report their proposed schedule for further proceedings. If, moreover, the Court is incorrect in believing that Plaintiff has abandoned his other objections to the search not discussed in his Reply, Shapiro is free to raise these points in any future summary-judgment briefing.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the parties' Cross-Motions for Summary Judgment. A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 11, 2016